## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIMZI, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FOURSQUARE LABS, INC., <br><br> Defendant. | Civil Action No._____ <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Mimzi, LLC ("Plaintiff"), for this Complaint against Foursquare Labs, Inc. alleges the following:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.

### THE PARTIES

2. Plaintiff Mimzi, LLC is a limited liability company formed under the laws of the State of Alabama with a place of business at 1592 South Point Drive, Hoover, Alabama 35244.

3. Upon information and belief, Defendant Foursquare Labs, Inc. ("Foursquare") is a Corporation organized and existing under the laws of Delaware, with a place of business at 568 Broadway, 10th Floor, New York, New York, 10012. Foursquare can be served in Delaware at its registered agent, Business Filings Inc., 108 West 13th Street, Wilmington Delaware 19801.

## JURISDICTION

4. This Court has subject matter jurisdiction for patent infringement actions under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Foursquare at least under 28 U.S.C. § 1400(a) and (b). Upon information and belief, Foursquare is incorporated in Delaware and has purposely availed itself of the privileges and benefits of the laws of this State. Foursquare has infringed Plaintiff's patent in Delaware by, among other things, engaging in infringing conduct within and directed at and/or from Delaware. Foursquare has purposefully placed one or more of the accused infringing products into the stream of commerce with the expectation they will be used in Delaware. These infringing products have been and continue to be used in Delaware.

## VENUE

6. Venue in this district is proper under 28 U.S.C. §§ 1400(b) and 1391(b) and (c), and because, upon information and belief, Foursquare is incorporated in Delaware and therefore resides in this district.

7. Upon information and belief, venue in this district is proper because substantial acts and events giving rise to Plaintiff's claims occurred in this judicial district.

8. Further, upon information and belief, venue in this district is proper because Foursquare does business in Delaware, including the commission in Delaware of one or more of the infringing acts of offering for sale, selling, using infringing products, or providing infringing services and support to Foursquare's customers in Delaware.

## U.S. PATENT NO. 9,128,981

9. On September 8, 2015, U.S. Patent No. 9,128,981 ("the '981 patent") was issued by the United States Patent and Trademark Office entitled "Phone Assisted 'Photographic Memory'". A true and correct copy of the '981 patent is attached as Exhibit A.

10. The sole inventor of the '981 patent is Mr. James Geer.

11. Jim Geer is the consummate forward-thinker and innovator, the patent in-suit being just one example. During the Gulf War, Mr. Geer developed a way to detect and track enemy stealth aircraft and submitted a patent application for his invention. The U.S. Air Force declared his invention a national secret and the U.S. Government issued an Order barring Mr. Geer from even talking about his invention. The secrecy order was lifted a decade later, and he received several U.S. patents. A further example of Mr. Geer's forward-thinking is in his several U.S. patents, originally filed in the 1990s, that are directed to the DVRs that are used today for recording multiple television shows.

12. As an independent businessman, in 1984 Jim Geer founded Executive Technologies, Inc. to develop a document search engine. Through his company, Mr. Geer offers a product called SearchExpress which includes document management, searching and scanning solutions for businesses.

13. Plaintiff, Mimzi LLC, of which Mr. Geer is the President, is the sole owner of the '981 patent and has all rights of past and future recoveries thereunder.

14. The '981 patent has not expired and is in full force and effect.

15. The marking requirements of 35 U.S.C. § 287 do not limit damages available to Plaintiff for infringement of the '981 patent.

16. Claims 1 through 9 of the '981 patent are directed to systems for presenting location-dependent information from social network databases to mobile electronic device users in response to the users' spoken requests.

17. Claims 10 through 15 of the '981 patent are directed to computer-implemented methods for presenting location-dependent information from social network databases to mobile electronic device users in response to the users' spoken requests.

18. Claims 16 through 19 of the '981 patent are directed to computer-implemented methods of mining information from a social network database in response to users' spoken requests.

19. Accordingly, and merely by way of illustration, inventions claimed in the '981 patent are directed to systems and to computer-implemented methods that are configured and operate to provide information to a mobile device user in response to a spoken question, such as "*Where is the nearest (best, most popular) Chinese restaurant?*"

20. Inventions claimed in the '981 patent are not directed to an abstract idea of merely searching for information on the Internet. Rather, the claims are directed to a new and useful configuration of components and describe an improvement in computer capabilities by specifying a complex series of steps performed by or through a mobile device to provide a desired result. These steps include: intaking a user's spoken request; accessing speech recognition software; converting the spoken request into a database query; determining the user's physical location and associating that location with the query; searching at least one social network database using the query and the user's physical location; ranking the information obtained and then providing the answer to the user.

21. These steps, either alone or in combination, were not well understood, routine or conventional to one of ordinary skill in the art at the time the inventions were made. Thus, they represent improvements in the capabilities of mobile devices to provide timely and useful information to users.

22. For example, speech recognition through mobile devices was neither routine nor conventional until after the application that led to the '981 patent was filed in July 2008.

23. The unconventional nature of these steps, alone or in combination, was confirmed in September 2008 by Google's then-Vice President of Search Products, Ms. Marissa Mayer, two months after the original application that led to the '981 patent was filed.

24. In a comment posted on Google's Official Blog, dated September 10, 2008, entitled "The future of search" (emphasis supplied) Ms. Mayer stated that "*Search needs to be more mobile – it should be available and easy to use in cell phones and in cars and on handheld . . . You should be able to talk to a search engine in your voice. You should also be able to ask questions verbally or by typing them in as natural language expressions. . . . Maybe the search engines of the future will know where you are located . . . .*" (Exhibit B).

25. The '981 patent's prosecution history further confirms the patentability of the claimed inventions. The continuation application that led to issuance of the '981 patent (serial number 14/664,841) was filed on March 21, 2015. All prosecution of that application occurred after and in light of the United States Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Indeed, some pending claims were rejected by the patent office under 35 U.S.C. § 101, but that rejection was overcome.

26. The '981 patent's prosecution history further confirms the novelty of the claimed inventions. Over 500 patents and applications were considered by the Patent Examiner during

prosecution, yet no reference was found to be anticipatory under 35 U.S.C. § 102. Furthermore, the only "prior art" rejection of any pending claim was based on an allegation of obviousness due to a combination of two references, under 35 U.S.C. § 103. That rejection was withdrawn by the Patent Examiner once it was shown that one of the references was dated after the '981 patent's effective filing date and, therefore, was not prior art.

## FOURSQUARE'S ACTIVITIES RELEVANT TO THE '981 PATENT

### Systems

27. Upon information and belief, Foursquare manufactures, offers and/or sells products and services including, but not limited to an Application (or "App") for use on mobile devices that use the Apple, Android, Microsoft or other operating systems. When used as intended on these devices, since September 8, 2015 (the issue date of the '981 patent), the Foursquare App infringes at least claim 1 of the '981 patent.

28. For example, systems claimed in the '981 patent include a data input port configured to receive speech information from the user of the mobile device. Upon information and belief, the Foursquare App installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are configured to receive either spoken or nonverbal requests from the user. Foursquare Screen 1 (below) shows the Foursquare App providing users the option of requesting information verbally. Foursquare Screen 2 shows the Foursquare App intaking a spoken request.





Microphone

Foursquare Screen 1                     Foursquare Screen 2

29. The systems claimed in the '981 patent (*e.g.*, claim 1) include the ability to identify the user's location. Upon information and belief, the Foursquare App installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are configured to identify a user's location, using Global Positioning System ("GPS") or other technology. As seen in Screens 1 and 2, the Foursquare App defaults to the user's location ("*near me*").

30. The systems claimed in the '981 patent include memory to store a transcript of the user's request and the user's location. Upon information and belief, the Foursquare App installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are configured to store such information in persistent and/or volatile memory, on the mobile device and/or on a remote server.

31. The systems claimed in the '981 patent include an interface to a social network database to transmit a query based on the user's spoken request and location, and to receive relevant information from that database. Upon information and belief, the Foursquare App installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are configured to interface with the Foursquare social network database and provide relevant information to the user. As seen below (Foursquare Screen 3), when a spoken request to find Chinese restaurants was made through the Foursquare App on an iPhone outside this Courthouse (844 North King Street, Wilmington, DE 19801), the follow results were displayed:



Spoken request

Foursquare Screen 3

32. The systems claimed in the '981 patent include a processor that is configured to rank the relevant social network database information according to at least one ranking factor. As seen below, when spoken requests to find the nearest Chinese restaurant (Foursquare Screen 4) and three-star Chinese restaurants (Foursquare Screen 5) were made through the Foursquare App on an iPhone outside this Courthouse, the following (different) ranked results were displayed:

    

Foursquare Screen 4          Foursquare Screen 5

Methods for Presenting Location-Dependent Information

33. Upon information and belief, the Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are capable of using computer-implemented methods to present location-dependent social network database information to a user in response to a spoken request. Thus, such use of Foursquare's App installed on mobile devices since September 8, 2015 (issue date of the '981 patent) infringes at least claim 10 of the '981 patent.

34. For example, computer-implemented methods claimed in the '981 patent include receiving speech information from the mobile device. Upon information and belief, and consistent with Foursquare Screens 1-2, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are capable of receiving spoken requests as part of the method used to provide users with location-dependent information from a social network database.

35. The computer-implemented methods claimed in the '981 patent include identifying the location of the mobile device user. Upon information and belief, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems use GPS or similar technology, as part of the method used to provide users with location-dependent information from a social network database.

36. The computer-implemented methods claimed in the '981 patent include storing the speech information and user's location. Upon information and belief, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems use persistent and/or volatile memory, on the mobile device and/or on a remote server to store

speech information as part of the method used to provide users with location-dependent information from a social network database.

37. The computer-implemented methods claimed in the '981 patent include automatically searching and ranking social network database information in accordance with the user's request and location and communicating those results to the user. Upon information and belief, and consistent with the results shown in Foursquare Screens 3-5, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems search and rank information from its social network, as part of the method used to provide users with location-dependent information from a social network database.

<u>Methods for Mining Information</u>

38. Upon information and belief, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are capable of using a computer-implemented method to mine information from a social network database in response to users' spoken requests. Thus, such use of the Foursquare App installed on mobile devices since September 8, 2015 (issue date of the '981 patent) infringes at least claim 16 of the '981 patent.

39. For example, the computer-implemented methods claimed in the '981 patent include receiving speech information from the mobile device. Upon information and belief, and consistent with Foursquare Screens 1-2, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems are capable of receiving a user's spoken request in using a computer-implemented method to mine information from a social network database.

40. The computer-implemented methods claimed in the '981 patent include identifying the location of the mobile device user. Upon information and belief, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems use GPS or similar technology to identify users' locations.

41. The computer-implemented methods claimed in the '981 patent include automatically using a spoken request and the user's location to generate a query of social network database information and outputting the results to the user. Upon information and belief and consistent with the results shown in Foursquare Screens 3-5, Foursquare Apps installed on mobile devices that use the Apple, Android, Microsoft or other operating systems automatically use a spoken request and the user's location to search and rank information from a social network database as part of the method used to mine information and output results to users.

## COUNT I

## FOURSQUARE'S DIRECT INFRINGEMENT OF THE '981 PATENT

42. Plaintiff restates and realleges paragraphs 1 through 41 into this Count.

### Foursquare's Infringement of the Claimed Systems

43. Since at least September 8, 2015 (the issue date of the '981 patent) Foursquare has made an App for mobile devices which provides users with systems that meet, either literally or equivalently, every element of at least claim 1 of the '981 patent.

44. Since at least September 8, 2015 (the issue date of the '981 patent) Foursquare, through its marketing, testing and quality control efforts associated with the Foursquare App for mobile devices, has used systems that meet, either literally or equivalently, every element of at least claim 1 of the '981 patent.

45. Foursquare benefits from each step of the claimed system because each element is necessary for Foursquare to provide location-dependent information from a social network

database to users of the Foursquare App in response to a spoken request. Further, upon information and belief, Foursquare generates revenue, for example, from sales of advertising and user-location information, through the use of the Foursquare App.

46. To ensure that the example used in this Complaint regarding restaurants is not construed as a limitation, and merely by way of illustration and not limitation, the spoken requests captured by this Count also include location-dependent information concerning other types of entertainment (*e.g.*, theaters), business establishments (*e.g.*, gas stations), services, medical providers and contractors.

47. All of the above constitute acts of direct infringement by Foursquare of at least claim 1 of the '981 patent.

### Foursquare's Infringement of the Claimed Methods

48. Since at least September 8, 2015 (the issue date of the '981 patent) each time a user of the Foursquare App on a mobile device made a spoken request for location-dependent information from a social network database, Foursquare used methods that meet, either literally or equivalently, every element of at least claims 10 and 16 of the '981 patent.

49. Foursquare benefits from each step of the claimed methods because each element is necessary for Foursquare to provide location-dependent information from a social network database to users of the Foursquare App in response to a spoken request. Further, upon information and belief, Foursquare generates revenue, for example, from sales of advertising and user-location information, through the use of the Foursquare App.

50. To ensure that the example used in this Complaint regarding restaurants is not construed as a limitation, and merely by way of illustration and not limitation, the spoken requests captured by this Count also include location-dependent information concerning other

types of entertainment (*e.g*., theaters), business establishments (*e.g*., gas stations), services, medical providers and contractors.

51. All of the above constitute acts of direct infringement by Foursquare of at least claims 10 and 16 of the '981 patent.

## COUNT II

### FOURSQUARE'S POST-COMPLAINT INDUCEMENT OF INFRINGEMENT OF THE '981 PATENT

52. Plaintiff restates and realleges paragraphs 1 through 51 into this Count.

### Users of the Foursquare App Directly Infringe the '981 Patent

53. Since at least September 8, 2015 (the issue date of the '981 patent) each mobile device user who made a spoken request, through the Foursquare App, for location-dependent information from a social network database, used systems that meet, either literally or equivalently, every element of at least claim 1 of the '981 patent.

54. Users of the Foursquare App benefit from every element of the claimed system because each is necessary to provide the user with the information requested.

55. Since at least September 8, 2015 (the issue date of the '981 patent) each mobile device user who made a spoken request, through the Foursquare App, for location-dependent information from a social network database used methods that meet, either literally or equivalently, every element of at least claims 10 and 16 of the '981 patent.

56. To ensure that the example used in this Complaint regarding restaurants is not construed as a limitation, and merely by way of illustration and not limitation, the spoken requests captured by this Count also include location-dependent information concerning other types of entertainment (*e.g.,* theaters), business establishments (*e.g*., gas stations), services, medical providers and contractors.

57. All of the above constitute acts of direct infringement of the '981 patent by users of the Foursquare App.

### Foursquare's Post-Complaint Inducement of User's Direct Infringement

58. Upon information and belief, the Foursquare App provides users of mobile devices with systems, instructions, encouragement and the capability to directly infringe the '981 patent.

59. Upon information and belief, at least as of the date of service of this Complaint, Foursquare is aware that the users of the Foursquare App on mobile devices infringe the '981 patent.

60. To the extent that Foursquare does not cease these infringing activities immediately, it is encouraging users of the Foursquare App on mobile devices to continue to infringe the '981 patent.

61. Upon information and belief, Foursquare will benefit from these ongoing infringements because Foursquare will continue to generate revenue from the use of the Foursquare App.

62. As of the date of service of this Complaint, these acts constitute Foursquare's active inducement of its users' direct infringement of at least claims 1, 10 and 16 of the '981 patent.

## JURY DEMAND

Plaintiffs hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Foursquare, along with its subsidiaries, affiliates, agents, servants, employees, and all others in active concert or participation with them granting the following relief:

(a) Judgment that Foursquare infringes, and has infringed the '981 patent, either directly, by inducement, or by virtue of Foursquare's vicarious liability for the acts of others, and/or under the Doctrine of Equivalents;

(b) A permanent injunction against Foursquare and its officers, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliates, and all others controlling, controlled by, affiliated with, in privity with, or in active concert or participation with them from infringing, contributing to, or inducing infringement of the '981 patent;

(c) An accounting for damages due to Foursquare's infringements;

(d) An award to Plaintiff in an amount determined at trial which is adequate to compensate it for Foursquare's infringement of the '981 Patent;

(e) A finding that this case is exceptional;

(f) Prejudgment interest and costs on any award;

(g) An order requiring the reimbursement of Plaintiff's attorney fees under 35 U.S.C. § 285; and

(h) Such other and further relief as the Court deems just and equitable.

|  |  |
|---|---|
| | Respectfully Submitted, |
| Dated:  November 9, 2018 |  */s/ Eric J. Evain* |
| | Eric J. Evain (# 3729) |
| William M. Parrish | eevain@gelaw.com |
| *Pro Hac Vice Forthcoming* | Edward M. Lilly (# 3967) |
| BParrish@hpylegal.com | elilly@gelaw.com |
| Henning Schmidt | GRANT & EISENHOFER P.A. |
| *Pro Hac Vice Forthcoming* | 123 Justison Street |
| HSchmidt@hpylegal.com | Wilmington, DE 19801 |
| Victor G. Hardy | Tel:  302-622-7000 |
| VHardy@hpylegal.com | Fax:  302-622-7100 |
| *Pro Hac Vice Forthcoming* | |
| HARDY PARRISH YANG, LLP | *Attorneys for Plaintiff* |
| Spicewood Business Center | *Mimzi, LLC* |
| 4412 Spicewood Springs Rd., Suite 202 | |
| Austin, Texas 78759 | |